

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11

THOMAS C. MARTIN,                )          Case No. CV 14-03903-JEM
                                 )
12                               )
                Plaintiff,       )
13                               )          MEMORANDUM OPINION AND
        v.                       )          ORDER AFFIRMING DECISION OF
14                               )          THE COMMISSIONER OF SOCIAL
CAROLYN W. COLVIN,               )          SECURITY
15  Acting Commissioner of Social Security, )
                                 )
16              Defendant.       )
   _____)
17

18                              **PROCEEDINGS**

19        On May 21, 2014, Thomas C. Martin ("Plaintiff" or "Claimant") filed a complaint

20  seeking review of the decision by the Commissioner of Social Security ("Commissioner")

21  denying Plaintiff's applications for Social Security Disability Insurance benefits and

22  Supplemental Security Income ("SSI") benefits.  The Commissioner filed an Answer on

23  September 4, 2014.  On April 8, 2015, the parties filed a Joint Stipulation ("JS").  The

24  matter is now ready for decision.

25        Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this

26  Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record

27  ("AR"), the Court concludes that the Commissioner's decision must be affirmed and this

28  case dismissed with prejudice.

**BACKGROUND**

Plaintiff Thomas Martin is a 57-year-old male who applied for Social Security Disability Insurance benefits and Supplemental Security Income ("SSI") benefits on June 15, 2011, alleging disability beginning June 1, 2007.  (AR 21.)  The ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 1, 2007, the alleged onset date.  (AR 23.)

Plaintiff's claims were denied initially on December 6, 2011.  (AR 21.)  Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") James L. Moser on September 5, 2012 in Los Angeles, California.  (AR 21.)  Claimant appeared and testified at the hearing and was represented by counsel.  (AR 21.)  Medical expert ("ME") Jordan Kaplowitz, M.D. (mistakenly named Julian Kivowitz in the ALJ opinion) and vocational expert ("VE") Sandra Trost also appeared and testified at the hearing.  (AR 21.)

The ALJ issued an unfavorable decision on October 4, 2012.  (AR 21-32.)  The Appeals Council denied review on March 24, 2014.  (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1.   Whether the ALJ committed reversible error in his analysis of the opinion evidence.

2.   Whether the ALJ's decision to discredit Plaintiff was supported by clear and convincing reasons.

3.   Whether the ALJ wrongly assessed Plaintiff's residual functional capacity ("RFC").

4.   Whether the ALJ breached his duty to develop the record in light of the opinions from a consultative examining physician who indicated more testing was necessary and in light of the "traumatic event" standard in SSR 83-20.

5.      Whether a subsequent, successful application for benefits warrants remand.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work.  Smolen, 80 F.3d at 1290.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations.  Parra, 481 F.3d at 746.  If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).  The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence

demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

### THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since June 1, 2007, the alleged onset date.  (AR 23.)

At step two, the ALJ determined that Plaintiff has the following medically determinable severe impairments: status post history of three gunshot wounds (healed but some irritation do not preclude ambulation); and drug induced psychosis.  (AR 23-25.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (AR 25-27.)

The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§  404.1567(b) and 416.967(b) with the following limitations:

> Specifically, Claimant can lift or carry up to 20 pounds occasionally, up to 10 pounds frequently, stand or walk 6 hours in an 8-hour work day, sit 6 hours in an 8-hour work day and he may need an extra 15 minute break during the work day (secondary to arthritis and gastritis).  He is able to understand, remember and carry out simple and repetitive tasks.

(AR 27-30.)  In determining the above RFC, the ALJ made an adverse credibility determination.  (AR 28.)

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a short order cook.  (AR 30.)  The ALJ, however, also made an alternative step five finding that, considering Claimant's age, education, work experience and RFC, there are

1  other jobs that exist in significant numbers in the national economy that Claimant also

2  can perform, including cleaner, laundry sorter and cafeteria attendant.  (AR 31.)

3      Consequently, the ALJ found that Claimant is not disabled within the meaning of

4  the Social Security Act.  (AR 32.)

5                                    **DISCUSSION**

6  **I.    THE ALJ'S RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

7      Plaintiff Thomas C. Martin challenges the ALJ's light work RFC, claiming that the

8  ALJ did not properly consider medical records from his treating physicians at Downtown

9  Mental Health, improperly discounted his credibility, improperly failed to incorporate

10 postural and uneven ground limitations into Plaintiff's RFC and failed to develop the

11 record fully.  The Court disagrees with these contentions.  The ALJ's RFC is supported

12 by substantial evidence.

13      **A.    The ALJ Properly Considered The Medical Opinion Evidence**

14      Plaintiff contends that the ALJ failed to evaluate the opinions of his treating

15 physicians at Downtown Mental Health or to provide specific, legitimate reasons for

16 rejecting those opinions.  Plaintiff makes the same argument about the consulting

17 psychiatrist, Dr. Fahmy Ibrahim.  The Court disagrees.

18                      1.    Relevant Federal Law

19      The ALJ's RFC is not a medical determination but an administrative finding or

20 legal decision reserved to the Commissioner based on consideration of all the relevant

21 evidence, including medical evidence, lay witnesses, and subjective symptoms.  See

22 SSR 96-5p; 20 C.F.R. § 1527(e).  In determining a claimant's RFC, an ALJ must

23 consider all relevant evidence in the record, including medical records, lay evidence, and

24 the effects of symptoms, including pain reasonably attributable to the medical condition.

25 Robbins, 446 F.3d at 883.

26      In evaluating medical opinions, the case law and regulations distinguish among

27 the opinions of three types of physicians:  (1) those who treat the claimant (treating

28 physicians); (2) those who examine but do not treat the claimant (examining physicians);

and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians).  See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial

7

1  evidence only when it is consistent with and supported by other independent evidence in

2  the record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

3          2.    Analysis

4          Plaintiff contends that the ALJ improperly considered the medical evidence in

5  failing to find a severe mental impairment other than drug induced psychosis.  He

6  contends that both his treating physicians at Los Angeles County/Downtown Mental

7  Health and the consulting psychiatric examiner, Dr. Ibrahim, opined that Plaintiff has the

8  impairment of non-drug induced psychosis, not otherwise specified.

9          The ALJ, however, committed no error in considering the medical evidence of

10  Plaintiff's mental limitations.  Plaintiff asserts that "[t]here is no mention of treating

11  physicians."  More specifically, Plaintiff cites treatment notes from April 1, 2009 (AR 264,

12  271, 276), May 2009 (AR 284), January 2011 (AR 290), July 6, 2011 (AR 287), February

13  2012 (AR 359), and March 2012 (AR 371) that the ALJ supposedly failed to consider in

14  evaluating Plaintiff's impairments and limitations.  Yet the ALJ decision repeatedly cites

15  the treatment notes of Plaintiff's treating physicians, including each of the notes

16  identified by Plaintiff above.  The ALJ specifically reports that outpatient treatment

17  records from the Department of Mental Health/Downtown Mental Health dated

18  November 28, 2006 to July 6, 2011 reflect treatment for allegations of paranoid ideation,

19  hopelessness, lack of interest, lack of pleasure, low energy, nightmares, crying spells,

20  and being easily startled as reflected in the April 2009 treatment note (AR 264, 271) that

21  Plaintiff claims was not considered.  (AR 24.)  Plaintiff was diagnosed with psychotic

22  disorder and polysubstance abuse (AR 276.)  The ALJ also notes in April 2009

23  hallucinations secondary to cocaine abuse and an initial diagnosis of depressive

24  disorder with psychotic features and cocaine dependence.  (AR 24.)

25          The ALJ next discussed at length the May 2009 treatment notes of Plaintiff's

26  physicians at Downtown Mental Health which reflect a normal mental status

27  examination.  (AR 25.)  These notes contain a diagnosis of psychosis NOS and

28  polysubstance abuse in early partial remission.  (AR 25, 305-07.)  The ALJ then notes

that Plaintiff repeatedly has tested positive for marijuana abuse, citing among others the January 2011 and July 2011 reports. (AR 25, 290, 287.) He cited the February 2011 report as evidence Plaintiff finds emotional support in group therapy. (AR 26, 359, 9F1-3.) Both of these reports indicate Plaintiff's psychosis was likely drug induced. (AR 359, 371.) He also cited the March 2012 report as evidence Plaintiff is cooperative during examinations. (AR 26, 371, 9F15.) The latter report indicates Plaintiff's psychosis could be drug induced. (AR 371.)

More generally, the ALJ cited and relied on reports from Plaintiff's treating physicians at Downtown Mental Health in determining that Claimant had mild limitations in activities of daily living and social functioning, and moderate limitations in concentration, persistence and pace. (AR 26-27.) Additionally, the ALJ relied on those treatment records to establish that Plaintiff retains good use of his memory and ability to concentrate, and showed significant improvement since 2009 with GAF scores in the 60 range. (AR 26.) Treatment records also show that Claimant could not abstain from drugs and was less than fully compliant with treatment and prescribed medication. (AR 26-27.) These records indicate Claimant made inconsistent statements about his drug abuse and was in denial of it, and the drug abuse may be ongoing. (AR 29.) Treating sources opined that Claimant's hallucinations are likely drug abuse or alcohol induced as there are no hallucinations without the abuse. (AR 29.) Treating sources also noted that Claimant interacts normally, he is able to concentrate and his memory functioning is unimpaired. (AR 29.) These findings were made by Plaintiff's treating physicians (5F).

The ALJ gave great weight to the testifying psychiatric expert, Dr. Jordan Kaplowitz. (AR 30, 57-59.) Specifically mentioning Downtown Mental Health treatment records (5F), Dr. Kaplowitz indicated that Claimant's psychiatric disorder is most likely drug induced, and that it is questionable whether he has stopped abusing drugs. (AR 30, 57-59.) He noted Plaintiff's GAF score of 60 is at the upper limit of moderate limitations, and can attend to a normal work week with no greater than moderate limitations. (AR 30, 57-59.) The ALJ even states that great weight was given to

Dr. Kaplowitz' opinion because it finds support from the moderate limitations "identified by treating sources."  Thus, the assertion that the ALJ did not consider the treating records of Downtown Mental Health in evaluating Plaintiff's mental impairments and limitations is simply untrue.

Plaintiff's argument that his treating providers established a severe mental impairment other than drug induced psychosis is not entirely true and irrelevant in any event.  As the above description of treating records indicates, Plaintiff's own treating physicians repeatedly tie Plaintiff's psychosis to his drug abuse.  The ALJ's decision not to recognize a mental impairment independent of Plaintiff's drug abuse would be harmless error in any event because Plaintiff's treating physicians did not opine any limitations beyond those found by the medical expert and reflected in the RFC.  Stout v. Comm'r of Soc. Sec. Adm., 454 F.3d 1050, 1055-56 (9th Cir. 2006) (harmless error is inconsequential to the nondisability determination).  Here, the ALJ gave great weight to the medical expert because "it finds support from the moderate limitations identified by treating sources who do not specifically opine the Claimant is unable to work."  (AR 30.) (Emphasis added.)  Plaintiff asserts greater limitations than those found by the ALJ but does not say what those limitations are or point to any evidence in the record of greater limitations being assessed by his treating physicians.  Also, in finding only moderate difficulties in concentration, persistence and pace, the ALJ specifically stated that "the medical expert's testimony of no greater than moderate limitations is supported by the overall record."  (AR 26.)  Thus, as the Commissioner observes, the ALJ did not reject or ignore Claimant's treating physician opinions nor are those opinions inconsistent with the ALJ's RFC.  Because the ALJ did not reject Claimant's treating physician opinions, there was no need to provide specific, legitimate reasons for rejecting their opinions.

Plaintiff also contends that the ALJ failed to give proper weight to the consulting psychiatric examiner, Dr. Fahmy Ibrahim.  (AR 333-337, 6F.)  As the ALJ noted, Dr. Ibrahim made a diagnosis of psychosis (AR 25) and like other medical sources found only mild to moderate limitations.  (AR 29.)  Both the medical expert and the ALJ relied

on Dr. Ibrahim's limitations throughout the ALJ decision.  (AR 26, 30.)  The ALJ gave significant weight to the consulting examiner's opinions to the extent consistent with the medical expert's opinion.  (AR 30.)  To the extent Dr. Ibrahim's opinion differs from the medical expert's, the latter's contradictory opinion provides a specific, legitimate reason for rejecting the opinion of another physician, including that of a treating physician. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

Plaintiff disagrees with the ALJ's assessment of the medical evidence regarding his mental impairments and limitations, but it is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record.  Andrews, 53 F.3d at 1039.  Where the ALJ's interpretation is reasonable as it is here, it should not be second-guessed.

The ALJ properly considered the medical opinion evidence.

### B.    The ALJ Properly Discounted Plaintiff's Subjective Symptom Allegations

Plaintiff alleges that the ALJ improperly discounted his subjective symptom allegations.  The Court disagrees.

### 1.    Relevant Federal Law

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 esp. n.2.  The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence.  Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  If the ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion."  Bunnell, 947 F.2d at 345.  The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  Thomas, 278 F.3d at 958;

11

1  see also Rollins, 261 F.3d at 856-57; Bunnell, 947 F.2d at 345-46.  Unless there is

2  evidence of malingering, the ALJ can reject the claimant's testimony about the severity

3  of a claimant's symptoms only by offering "specific, clear and convincing reasons for

4  doing so."  Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722.  The ALJ

5  must identify what testimony is not credible and what evidence discredits the testimony.

6  Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

7          2.    Analysis

8       In determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically

9  determinable impairments reasonably could be expected to cause the alleged

10  symptoms.  (AR 28.)  The ALJ, however, also found that Plaintiff's statements regarding

11  the intensity, persistence and limiting effects of these symptoms were "not credible" to

12  the extent inconsistent with the ALJ's RFC.  (AR 28.)  Because the ALJ did not make

13  any finding of malingering, he was required to provide clear and convincing reasons

14  supported by substantial evidence for discounting Plaintiff's credibility.  Smolen, 80 F.3d

15  at 1283-84.  The ALJ did so.

16       First, Plaintiff's allegations of disabling pain and other symptoms are inconsistent

17  with the medical evidence of record regarding Plaintiff's physical and mental

18  impairments and limitations (AR 28-30) which indicates Plaintiff can perform light work

19  with limitations.  (AR 27.)  An ALJ is permitted to consider whether there is a lack of

20  medical evidence to corroborate a claimant's alleged pain symptoms so long as it is not

21  the only reason for discounting a claimant's credibility.  Burch v. Barnhart, 400 F.3d 676,

22  680-81 (9th Cir. 2005).  Here, Plaintiff testified he cannot work because of pain in his

23  stomach, back and hip from gunshot wounds.  (AR 52.)  However, in an October 27,

24  2011 report, Dr. Sheila Benrazavi, a consulting internist, found Plaintiff had normal range

25  of motion in his back, negative straight leg raising, no edema in his extremities and

26  normal range of motion in his shoulders, elbows, wrists, knees and hands.  (AR 24, 338-

27  343.)  There was some range of motion limitation in his left ankle and left hip.  (AR 24.)

28  Dr. Benrazavi ascribed a light work RFC except Claimant can stoop and climb

12

occasionally and occasionally walk on uneven ground.  (AR 29.)  State reviewing physician Dr. A. Ahmed assessed a medium RFC with no postural limitations.  (AR 29.)  As for mental limitations, even though Plaintiff complained of "green monsters," Dr. Ibrahim assessed Claimant with a GAF score of 60 indicating mild symptoms and found only mild to moderate mental limitations.  (AR 25, 29.)  State agency consulting psychiatrist Dr. L. Carlson also assessed mild to moderate limitations.  (AR 29-30.)  So did testifying medical expert Dr. Jordan Kaplowitz.  (AR 30, 57-59.)

Second, the ALJ noted inconsistencies between Plaintiff's statements of disabling symptoms and his other statements and conduct.  An ALJ may consider such inconsistencies in evaluating credibility.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Light v. Social Sec. Adm., 119 F.3d 789, 792 (9th Cir. 1997); Thomas, 278 F.3d at 958-59.  Here, the ALJ found that Plaintiff's work activity in 2011, which neared a substantial gainful activity level, "undermines his subjective complaints for that year."  (AR 23.)  The ALJ also found that, despite a history of gunshot wounds to the abdomen and legs, Claimant is able to walk independently and there is no evidence of advanced arthritis, digestive complications, neurological deficit or significant range of motion of deficit.  (AR 28.)  When examined in 2010, there were no significant findings associated with thigh or ankle tenderness.  (AR 28.)  In December 2010, Claimant was in good condition and failed to follow up with medical care to travel out of state.  (AR 28.)  Accordingly, the ALJ concluded that, while Claimant has some pain, his subjective pain complaints are not fully credible due to the inconsistencies noted above.  (AR 29.)

Third, the ALJ received conservative care with medications.  An ALJ may consider conservative treatment in evaluating credibility.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  Impairments that can be controlled effectively with medication are not disabling.  Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2006).  Here, the ALJ found Plaintiff had received routine, outpatient care for his physical pain.  (AR 24.)  Plaintiff did not receive any treatment for his physical pain from 2005 to 2010.  (AR 24, 28.)  He received primarily over the counter medication for his physical pain.

(AR 28.)  As for his mental complaints, the ALJ found that Plaintiff's condition improved with treatment and when not abusing drugs he has no audio or visual hallucinations. (AR 29.)

Fourth, the ALJ found Plaintiff less than credible because he made inconsistent statements to medical providers about his drug abuse or lack thereof.  (AR 29.) Treatment providers noted Plaintiff was in denial of his drug abuse, less than fully compliant with treatment and drug abuse likely ongoing despite statements to the contrary.  (AR 29.)  He testified positive for marijuana on numerous occasions in 2010 and 2011, despite telling Dr. Ibrahim in October 2011 he had stopped using marijuana two years earlier.  (AR 25.)

Plaintiff offers little in response to these credibility findings except to disagree with the ALJ over his interpretation of the medical evidence.  It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record.  Andrews, 53 F.3d at 1039.  Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ discounted Plaintiff's subjective symptom allegations for clear and convincing reasons supported by substantial evidence.

## C.    The ALJ's RFC Is Supported By Substantial Evidence

Plaintiff next contends that the ALJ's RFC is deficient because it omits limitations supported by substantial evidence.  The Court disagrees.  There was no error.

Plaintiff's first argument is that the ALJ did not account for postural and walking limitations assessed by the consulting internist, Dr. Soheila Benrazavi.  Specifically, Dr. Benrazavi ascribed a light work RFC and specified Plaintiff could lift 20 pounds occasionally and sit, stand and walk 6 hours in an 8 hour day.  (AR 29.)  Because of diminished range of motion in Claimant's left hip and left ankle (AR 24), Dr. Benrazavi assessed limitations to only occasional walking on uneven ground.  (AR 29.)  The ALJ's RFC does not include these two limitations.  Plaintiff contends that including these limitations would result in a sedentary, disabling work classification.

Plaintiff's argument fails for several reasons.  First, the ALJ cites to contrary evidence that would constitute specific, legitimate reasons for rejecting Dr. Benzaravi's postural and walking limitations.  The ALJ cited the report of State agency reviewing physician Dr. A. Ahmed who assessed a medium work RFC with no postural limitations and no limitations in regard to walking on uneven terrain.  (AR 29.)  The ALJ also noted that Claimant is able to walk independently and discounted Plaintiff's subjective physical pain complaints.  (AR 28-29.)

Second, any error in omitting Dr. Benrazavi's physical limitations from Plaintiff's RFC was harmless.  Tommasetti, 533 F.3d at 1042-43 (error harmless if inconsequential to the ultimate nondisability determination).  The omitted limitations would not erode the availability of light work or reduce Plaintiff's RFC to sedentary as he contends.  SSR 83-14 makes clear that the major difference between sedentary and light work is that most light jobs require a person to be walking and standing most of the work day.  1983 WL 31254*4.  Dr. Benrazavi and Dr. Ahmed both found Claimant able to sit, stand and walk 6 hours in an 8 hour work day.  (AR 29.)  Plaintiff cites no evidence to the contrary.  SSR 85-15 establishes that, if a person cannot stoop but occasionally, the sedentary and light occupational bases will be intact.  1985 WL 56857*7.  SSR 83-14 further establishes that climbing limitations will have little effect on the light occupational base.  1983 WL 31254*5.  No climbing is required in any of the jobs identified by the VE: cleaner (DOT 323.687-44), laundry sorter (361.684-014) and cafeteria attendant (311.677-010).  (AR 31.)  The first two require only occasional stooping; even if we exclude the cafeteria attendant because stooping is frequent for that job, the other two jobs would provide a significant number of jobs in the national economy.  (AR 31.)  None of the jobs requires walking on uneven ground.  Dr. Benrazavi, moreover, gave a light work RFC with both limitations.  (AR 29.)  Plaintiff's contention that including these limitations in his RFC would result in a sedentary work classification has no merit.  The ALJ committed no error in excluding the two limitations and even if it was error, the error was harmless.

Plaintiff also contends that the ALJ's mental limitation to simple, repetitive tasks (AR 27) was insufficient.  He contends that the ALJ should have restricted Plaintiff to nonpublic contact, based on the Mental RFC Assessment of Dr. Mark Dilger.  (AR 96.)  Dr. Dilger, however, only restricted Plaintiff to "occasional public contact."  (AR 96.)  In any event, the ALJ cited contrary evidence that would constitute specific, legitimate reasons for rejecting the limitation.  Specifically, the medical expert found that Claimant "is able to interact with supervisors, co-workers and the general public with only mild limitations."  (AR 30.)  Dr. Ibrahim also found that Claimant had only mild limitations in the ability to interact with supervisors, co-workers and colleagues.  (AR 29.)  Plaintiff's treating physicians found that he had only mild limitations in social functioning, having acquired greater interactional skills from treatment and therapy.  (AR 26.)  The ALJ committed no error in excluding nonpublic contact from the RFC.

Similarly, Plaintiff's contention that the RFC failed to capture his deficits in concentration, persistence and pace is unsupported by the evidence.  Plaintiff's treating physicians, Dr. Ibrahim, Dr. Carlson and the medical expert all opined that Plaintiff would have no greater than moderate limitations in concentration, persistence and pace or in his ability to perform simple repetitive tasks.  (AR 26, 29-30.)

Plaintiff disagrees with the ALJ's RFC, but again it is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record.  Andrews, 53 F.3d 1039.  Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed.  Rollins, 261 F.3d at 857.

The ALJ's RFC is supported by substantial evidence.  The ALJ's nondisability determination is supported by substantial evidence and free of legal error

### D.    The ALJ Fully Developed The Record

Plaintiff contends that the ALJ failed to develop the record.  The Court disagrees.

To be sure, in Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the Claimant's interests are considered.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80

16

1   F.3d at 1288; Brown v. Heckler, 713 F.2d at 441, 443 (9th Cir. 1983).  The ALJ has a

2    basic duty to inform himself about facts relevant to his decision.  Heckler v. Campbell,

3   461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring).  The ALJ's duty to develop the

4   record exists even when the claimant is represented by counsel.  Tonapetyan, 242 F.3d

5   at 1150.  Ambiguous evidence or the ALJ's own finding that the record is inadequate to

6   allow for proper evaluation of the evidence triggers the ALJ's duty to conduct an

7   appropriate inquiry.  Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150.

8          Plaintiff first notes that Dr. Ibrahim recommended further psychological testing to

9   rule out malingering.  (AR 29, 336.)  This recommendation, Plaintiff contends, indicates

10  that additional evidence is needed and that the ALJ breached his duty to further develop

11  the record.   Quite to the contrary, the record in this case is extensive, containing reports

12  of Plaintiff's treating physicians, Dr. Kaplowitz and Dr. Carlson.  Dr. Ibrahim did not have

13  the benefit of these records.  (AR 339) ("There are no medical records available for

14  review at this time").  The ALJ's conclusion that Plaintiff's mental limitations are but mild

15  to moderate is supported by substantial evidence.  (AR 26, 30.)  Thus, the ALJ's light

16  work RFC with mental limitations to simple, repetitive tasks is supported by substantial

17  evidence.  There was no need to develop the record further.  An ALJ's duty to develop

18  the record further is triggered only when there is ambiguous evidence or the record is

19  inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276

20  F.3d 453, 459-60 (9th Cir. 2001).  As in Mayes, "[t]he record before the ALJ was neither

21  ambiguous nor inadequate to allow proper evaluation of the evidence."  Id. at 460.

22         Plaintiff also contends that the testifying expert indicated he was "not sure"

23  Claimant had stopped his drug abuse (AR 58) but Dr. Kaplowitz did not indicate he

24  needed any additional information to provide an opinion on Plaintiff's mental

25  impairments.  The record, moreover, is full of evidence from Plaintiff's treating physicians

26  of his drug abuse, summarized above.  His own statements were found inconsistent

27  about his drug abuse.  (AR 29.)  Finally, Plaintiff does not explain how his drug abuse or

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

lack thereof would or could change the ALJ's RFC or the consistent findings of mild to moderate limitations.

The ALJ did not fail to develop the record fully.

## II.   A SUBSEQUENT SUCCESSFUL APPLICATION FOR BENEFITS DOES NOT WARRANT REMAND

Plaintiff contends that the ALJ erred by not remanding the case to consider the effect of a successful subsequent application for benefits.  Attached to the Joint Stipulation is an October 7, 2014 Notice of Award ("NOA") finding disability and establishing a disability onset date of May 21, 2013.  The Ninth Circuit in Luna v. Astrue, 623 F.3d 1032 (9th Cir. 2010) ruled that, where there is a "reasonable possibility" that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application, "further consideration of the factual issues is appropriate to determine whether the outcome of the first application should be different."  Id. at 1035.  The Court could not conclude whether the two decisions were "irreconcilable or inconsistent" because there was only one day between the denial of the first application and the disability onset date of the second application, and it was uncertain whether Plaintiff may have presented different medical evidence to support the two applications or there might be some other reason to explain the change.  Id.

This case, however, differs in material respects.  First, in Luna the Commissioner stipulated to remand, but disagreed with Plaintiff on the terms of remand.  In this case, the Commissioner does not stipulate to remand and does not concede there is any legal or factual basis for reversing the ALJ's decision on the first application.  See Mulay v. Colvin, 2015 WL 1823261 (C.D. Cal.)

Second, in Luna there was no opportunity for claimant to submit the medical evidence supporting the second application to the District Court.  The initial ALJ decision was issued on January 27, 2006 and the second application was granted on August 20, 2007 while the case was on appeal.  623 F.3d at 1033, 1034.  The facts here are quite different.  Nothing prevented Plaintiff from submitting the medical evidence supporting

1  the second application so that this Court could determine whether the two applications
2  are inconsistent or irreconcilable.  Plaintiff should not be able to "engineer" a remand by
3  failing to present evidence in his control and where he knows what medical evidence
4  was submitted to the agency in the second application.  In fact, we think it fair to infer
5  that the applications are reconcilable or Plaintiff would have submitted the evidence here
6  along with the NOA.  We do not read Luna as sanctioning Plaintiff's conduct here.

7      Third, Luna distinguished the case of Bruton v. Massanari, 268 F.3d 824, 827 (9th
8  Cir. 2001) because in Bruton the subsequent application "involved different medical
9  evidence, a different time period, and a different age classification."  Here, the NOA
10  states that the subsequent grant of benefits was based on medical evidence received by
11  the agency in June, August and September of 2014, nearly two years after the ALJ
12  decision of October 4, 2012.  The NOA, moreover, clearly states that this evidence
13  establishes Plaintiff's earliest date of disability is May 21, 2013, which is seven months
14  after the ALJ's decision.  Nothing in the NOA suggests that the evidence it cited supports
15  disability earlier than May 21, 2013 or earlier than October 4, 2012.  Presumably,
16  Plaintiff would have presented such evidence.  Plaintiff had the burden to demonstrate
17  that the ALJ's RFC is not supported by substantial evidence, Parra, 481 F.3d at 746,
18  and, by failing to present evidence in his possession, failed to do so.

19      The Court notes that in Luna the disability onset date established in the
20  subsequent decision was one day after the initial ALJ decision.  623 F.3d at 1034.  Here,
21  the onset date in the second application is May 21, 2013, seven months after the
22  October 4, 2012 ALJ decision in this case.  Plaintiff cites cases involving gaps of that
23  length or more, and the Court agrees that the time difference is not per se conclusive.
24  The Court, however, believes that the time gap here, in combination with the other
25  factors mentioned, weighs in favor of denial of remand.

26      Plaintiff, finally, turned 55 on May 21, 2013, shifting into another age classification.
27  May 21, 2013 is the date established in the NOA as the disability onset date.

28

1    Thus, the Court disagrees that remand is appropriate to consider the effect of the

2  second application on the ALJ decision here.

3                                     **ORDER**

4    IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the

5  Commissioner of Social Security and dismissing this case with prejudice.

6

7  DATED: June 10, 2015                    */s/ John E. McDermott*

8                                    JOHN E. MCDERMOTT
                                     UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28